**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

UNITED STATES                                           PLAINTIFF

v.                                           No. 3:12-cr-119-BJB

DONTRAE M. THOMAS                                       DEFENDANT

\* \* \* \* \*

<u>MEMORANDUM OPINION & ORDER</u>

Dontrae Thomas requests compassionate release or a reduction of his 180-month sentence under 18 U.S.C. § 3582. Motion for Compassionate Release (DN 190) at 1–3. This is Thomas's second such motion. DN 177. The Court denied Thomas's first motion because his concerns about Covid-19 were not "extraordinary and compelling." Court Order (DN 187) at 7–9. This time Thomas offers as an allegedly extraordinary and compelling reason the death of Thomas's mother, which he explains left his minor son without a guardian. Motion at 1–3. Thomas admits that he did not exhaust this claim because this was an "emergency," *id.* at 4–6, and because a prison official allegedly told him a request would be denied automatically, *id.* at 1, 4–5. So Thomas asks for an equitable exception to or waiver of the exhaustion requirement. *Id.* at 4–6.

Months passed and the United States did not respond. So the Court ordered it to do so within 21 days. DN 195. That deadline came and went. In light of that initial failure to respond, Thomas moved for judgment on his release motion. DN 201. Finally, the United States responded, seeking an after-the-fact extension based on a retirement. DN 204. The Court excuses the late filing and declines Thomas's invitation to hold that the United States waived its opposition to his release. The government's response did, however, either waive or tacitly agree with Thomas's position on exhaustion, never raising it as a defense. United States Response (DN 212) at 1; *see United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (compassionate-release exhaustion is a claim-processing rule that can be waived by the government but not by a court). The United States also concedes that "the death or incapacitation of the caregiver of the defendant's minor child or minor children" can constitute a compelling reason under § 3582. Sentencing Guideline § 1B1.13 cmt. nt. 1(C)(i); Response at 4; *United States v. Thompson*, No. 3:17-cr-170, 2021 WL 2418573, at \*4–5 (W.D. Ky. June 14, 2021) (finding grave illness of minor's guardian a compelling reason). But the United States contends Thomas hasn't shown that the child lacks a caregiver by citing only the minor's mother's statement that she cannot care for him. Response at 4–5.

1

Even if we assume that the Thomas has proven that "extraordinary and compelling reasons warrant [a sentence] reduction," the Court must consider the factors listed in 18 U.S.C. § 3553(a) before granting such a motion. *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020) (affirming a district court that assumed a compelling reason existed, yet found that the factors weighed against release). Courts must provide specific factual reasons for their statutory analysis, but needn't "specifically articulate [their] analysis of every single § 3553(a) factor." *Id.* at 1114 (internal quotations omitted). Those factors include: the nature and circumstances of the offense; the Defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public from further crimes, and avoid unwarranted sentencing disparities; and several other factors familiar to the federal sentencing process. § 3553(a)(1)–(7).

The United State argues that relief is inappropriate under the factors. Response at 5–6. Although the court is certainly sympathetic to the plight of Thomas's family, the § 3553(a) factors do not support his motion for release (DN 190).

**(1) the nature and circumstances of the offense and the history and characteristics of the defendant;**

The nature and circumstances of Thomas's offense weigh against a reduction of his sentence, which the Court set at the statutory minimum, consistent with his plea agreement. Thomas is a convicted felon and fugitive. He had participated in numerous armed robberies. Then he was caught with a loaded .45 caliber semiautomatic handgun. Presentence Investigation Report (DN 91) ¶¶ 6, 9, 12, 26, 34.[1] A felon's possession of a gun is a serious offense, and Thomas's participation in multiple robberies suggests his willingness to use weapons to commit other offenses. *See United States v. Austin*, 825 F. App'x 324, 326 (6th Cir. 2020) (affirming district court's denial of compassionate release for a felon in possession, based in part on the fact that the defendant had carried a loaded firearm).

Thomas's history and characteristics also weigh against release. He is a repeat offender. *See, e.g.*, *Jones*, 980 F.3d at 1115; *United States v. Navarro*, 986 F.3d 668, 672 (6th Cir. 2021) (defendant's repeat offenses weighed against early release). In fact, Thomas's criminal history is so serious he was sentenced as an armed career criminal. Judgment (DN 96) at 2; *see also United States v. Mitchell*, No. 07-20406, 2021 WL 22465, at *2 (E.D. Mich. Jan. 4, 2021) (ACCA finding weighed against compassionate release).

---

[1] "The ... statements of applicability of sections of the sentencing guidelines and the statement of facts [cited in the PSR] are binding upon the Court . . . [because] the Court accept[ed] the plea agreement." PSR ¶ 4.E.

Thomas "started getting into trouble" when he was only a teenager, "joy riding" in stolen cars. PSR ¶ 47. Thomas later possessed fifteen stolen cars, twice possessed a handgun despite a prior felony conviction, violated his parole, and was involved in seven separate armed robberies. ¶¶ 32–34. The robberies alone cut strongly against release. *See United States v. Patterson*, No. 5:14-cr-289, 2020 WL 7863843, at *2 (N.D. Ohio Dec. 31, 2020) (armed career criminal designation, based on several armed robberies, counted against compassionate release). Thomas's other criminal conduct includes (in part) fleeing from law enforcement and "t[aking] an aggressive posture" toward police, requiring them "to … physically subdu[e]" Thomas. ¶¶ 41, 43. Police found a "large amount" of suspected crack cocaine and $1,008 in cash on Thomas's person, as well as a fully loaded .45 handgun and marijuana in Thomas's car. ¶ 41. These instances do not even account for Thomas's numerous arrests for crimes including trafficking cocaine, assault of an officer, burglary, and more. ¶¶ 42–45. Thomas's long and dangerous history makes his current weapons conviction all the more troubling. Thomas has yet to rehabilitate and has continued to pose a danger to the public.

To be sure, Thomas has made progress: he completed a Substance Abuse Program in 2007 and again in 2010 while he was an inmate in the Kentucky Department of Corrections. ¶ 55. Thomas reports quitting marijuana, which he regularly smoked until 2007. *Id.* He also completed the requirements for his GED on October 17, 1994. ¶ 56. And his *pro se* legal filings are impressive in many respects—even compared to those of many attorneys who practice before this Court. Still, these steps cannot counterbalance the factors weighing against his release.

**(2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;**

Releasing Thomas would fail to reflect the seriousness of his offense, promote respect for the law, and provide just punishment for his offense. "[T]he 'need to provide just punishment' and 'to reflect the seriousness of the offense,' allow courts to consider the 'amount of time' that a defendant has served on a sentence when deciding whether to grant a sentence reduction." *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) (quoting *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020)). Thomas's motion for a reduced sentence indicates he has completed 92 months of his prison term since his commitment to custody in October 2016. Motion at 3. Thomas also cites a Good Conduct Time Reduction, noting he expects to serve only 153 months of his 180-month sentence. *Id.* "According to the Bureau of Prisons website, Thomas has an expected release date of January 19, 2027." Response at 2. Thomas thus has more than four years left to serve.

3

Thomas's case is unlike others in which defendants have successfully petitioned the court for early release: Thomas has years, not months, left to serve. *See, e.g., United States v. Hansen*, No. 17-cr- 50062, 2020 WL 2219068, at *2 (N.D. Ill. May 7, 2020) (less than seven months left to serve); *United States v. Walker*, No. 1:11-cr-270, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019) (approximately two months left to serve in prison before transfer to a halfway house). Other courts have found that when defendants serve only a fraction of their sentences, early release would fail to reflect the seriousness of their offenses. *See, e.g., Jones*, 980 F.3d at 1115 (defendant had served only two out of a mandatory ten-year sentence, which weighed against early release); *Mitchell*, 2021 WL 22465, at *2 (5 years left); *United States v. Hill*, No. 11-20090-01, 2020 WL 7056098, at *2 (D. Kan. Dec. 2, 2020) (20% of sentence remaining).

As noted, possessing a gun as a felon, especially as an armed career criminal convicted of violent crimes in the past, is a serious offense. And Thomas's long criminal history involving similar charges indicates a serious risk of recidivism. This is far from Thomas's "first rodeo in Federal Court," a fact that according to some judges weighs against any finding that a reduced sentence would afford adequate deterrence to criminal conduct. *See, e.g., Jones*, 980 F.3d at 1115 (defendant's repeat offenses are relevant to 3553(a)(2)(B)). So the seriousness of the offense and need for deterrence strongly weigh against Thomas.

### (C) to protect the public from further crimes of the defendant;

Thomas's current conviction and criminal history indicate he remains a threat to society. *See Ruffin*, 978 F.3d at 1003 (defendant was a danger to the community because of his extensive criminal record). Thomas is an armed career criminal based on multiple armed robberies and stolen cars. PSR ¶¶ 12, 32–34, 41. Law enforcement has found Thomas with loaded guns during several of these crimes, including his most recent conviction. *Id*. This implies a willingness by Thomas to use firearms in order to commit property crimes. The law disarms felons precisely because they pose a heightened threat to the public. And by their nature, property crimes have victims in the community. Adding guns to the mix only increases the chance of violence or other harms to the public.

Thomas argues that the Bureau of Prisons' willingness to let him transfer prisons indicates that BOP does not actually treat him as dangerous. Motion at 3, 9. But that is of course not the position of the United States in this case. And only a couple of months ago the Bureau of Prisons concluded Thomas was likely to commit other crimes and pose a danger to the community: a BOP regional director denied Thomas's appeal of the warden's denial of his compassionate-release request. Regional Appeal Remedy Response (DN 212-3) at 1 (Feb. 2, 2022). The Regional Director based her denial, in part, on Thomas's "[h]igh risk [l]evel of recidivating." *Id*.

So Thomas's criminal history, offense of conviction, and treatment by the BOP all indicate a need to protect the public from further crimes.

> **(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

Thomas notes the training he has received in prison as a factor supporting release. Motion at 10. For other correctional treatment, the Court recommended to the Bureau of Prisons that Thomas be housed at a "facility with a Residential Drug Abuse Program." Judgment (No. 96) at 3. Thomas indicates that he has already "completed drug education." Motion at 3. Thomas also notes that he has engaged in vocational training while in custody. *Id.* Whether Thomas would receive additional treatment or training is unclear. While his progress is certainly laudable, its consideration under this factor adds little to the overall analysis in this case.

> **(3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established;**

Thomas received the shortest sentence allowed by Congress. "Based upon a total offense level of 30 and a criminal history category of V, the guideline imprisonment range is normally 151 months to 188 months." PSR ¶ 63. Thomas, however, was "subject to a [statutory] mandatory minimum of 180 months," which meant "the guideline range [was] 180 to 188 pursuant to Section 5G1.1(c)(2)." *Id.* The sentencing judge also declined to reduce Thomas's sentence below 180 months, rejecting Thomas's request for a downward departure under U.S.S.G. §5G1.3(b). Judgment at 3; USA Sentencing Memo (DN 92). Thomas received the mandatory minimum required by the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1); PSR ¶ 26. This was based on a voluntary plea deal, under Fed. R. Crim. P. 11(c)(1)(C), that helped him avoid a potential maximum sentence of life. *Id.* ¶¶ 3, 62. A lower sentence was not available for Thomas under the Guidelines range the sentencing judge applied.

> **(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;**

Releasing Thomas or reducing his 180-month sentence would likely create unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Thomas even admits this. Motion at 11–12. District courts within the Sixth Circuit have sentenced other armed career criminals convicted of 922(g)(1) offenses to terms similar to Thomas's. *See, e.g.*, *United States v. Noel*, No. 08-20497, 2021 WL 289650, at *1 (E.D. Mich. Jan. 28, 2021) (two concurrent 188-month sentences for two 922(g)(1) counts); *United States v. Jordan*,

No. 09-cr-20490, 2020 WL 4016087, at *1 (E.D. Mich. July 16, 2020) (denying compassionate release of defendant sentenced to 188 months for felon-in-possession offense).

And in this district, other defendants similarly situated to Thomas have received sentences of at least the statutory minimum. *See, e.g.*, *Hayes v. United States*, No. 5:17-cr-24, 2021 WL 4345782, at *1 (W.D. Ky. Sept. 23, 2021) (denying compassionate release from 15-year statutory minimum sentence for a 922(g)(1) offense); *United States v. Colbert*, No. 3:10-cr-151, 2021 WL 5815973, at *1 (W.D. Ky. Dec. 7, 2021) (denying compassionate release from 235-month felon-in-possession sentence).  So releasing Thomas at least 4 years early would create serious sentencing disparities compared to other armed career criminals who received mandatory minimums.

\* \* \*

None of these individual factors support Thomas's request for compassionate release.  When considered together, the arguments against his request are quite strong indeed.  Thomas has come a long way, and the Court certainly sympathizes with his loss and family situation.  But Thomas has a serious criminal history that resulted in his designation as an armed career criminal.  That record, including his most recent conviction as a felon in possession, cautions against releasing Thomas into the public despite the compelling family reason he presents.  As a result, the Court denies Thomas's Motion for Compassionate Release (DN 190) and his Motion for Judgment (DN 201).

Benjamin Beaton, District Judge
United States District Court

May 5, 2022

6